UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MICHAEL ANGELO BURNETT,

        Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

        Defendants.
_____/

Case No. 2:25-cv-203

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.[1] Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.12.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.*

---

[1] Although Plaintiff has had at least three cases dismissed on the grounds that they were frivolous, malicious, and/or failed to state a claim, in this action, Plaintiff has sufficiently alleged that he is in imminent danger of serious physical injury. As such, Plaintiff will be permitted to proceed *in forma pauperis* in this action.

*Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim and/or as frivolous as detailed below.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility, the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan, and the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues MDOC Director Heidi Washington, LCF Warden Bryan Morrison, URF Warden James Corrigan, URF Deputy Warden of Security Unknown Party #1, URF Medical Doctor Brenda Buchanan, LCF Grievance Coordinator Jennifer Rohrig, URF Grievance Coordinator D. Eicher, and URF and LCF Correctional Officers Unknown Parties. (Compl., ECF No. 1, PageID.2–4.)

In Plaintiff's complaint, he alleges that in 2005, the MDOC "closed all gun towers in Correctional Facilities Administrations (CFAs)," and the gun towers were "replaced . . . with the personal protection device security systems to secure CFAs throughout the [MDOC]."[3] (*Id.*, PageID.4.) Plaintiff describes the "personal

---

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

protection device security systems" as an "indistinct security device [that] is locked onto prison staff when they come through the control center to report to work by custody staff who are responsible for tracking their movement and physically assisting them when in danger." (*Id.*)  Plaintiff further states that "[t]hey can also observe what prison staff observe and communicate with them." (*Id.*)

Plaintiff alleges that "custody of security staff" use the "personal protection device security systems" to "lock onto Plaintiff and assault Plaintiff sexually by penetrating Plaintiff's [private area] with an indistinct security device," which Plaintiff believes has caused him "to develop prostate cancer." (*Id.*)  Plaintiff claims that from October 2021 through August 2025, Defendants URF and LCF Correctional Officers Unknown Parties have "sexually assaulted" Plaintiff in that manner. (*Id.*, PageID.5.)  Plaintiff contends that Defendants URF and LCF Correctional Officers Unknown Parties have "continuously stated to Plaintiff, 'That they can not get the personal protection device security systems indistinct security device off him.'" (*Id.*)  Plaintiff also contends that Defendants URF and LCF Correctional Officers Unknown Parties have told Plaintiff that "Defendant Washington ordered them to get Plaintiff off the personal protection device security systems by any means necessary." (*Id.*)  Further, Plaintiff claims that Defendant Washington "authorized" Defendants URF and LCF Correctional Officers Unknown Parties' "unprovoked use of excessive force intending to deprive Plaintiff of life, with the sole objective of getting Plaintiff off the personal protection device security systems." (*Id.*, PageID.5–6.)

Additionally, Plaintiff alleges that Defendants Morrison and Corrigan "knowingly approved of the sexual assaults committed by their officers" using the "personal protection device security systems" due to "Plaintiff's numerous grievance filings about the matter." (*Id.*, PageID.6.) Plaintiff believes that "the only way [he] can be taken off the personal protection device security systems is by turning off the security systems throughout the MDOC." (*Id.*)

In October 2023, Plaintiff had "a routine prostate specific antigen blood test which was 3.5 indicating that [Plaintiff] may have prostate cancer," "which prompted a referral for an MRI." (*Id.*) "The MRI showed that [Plaintiff] ha[d] a mass of 1.5 cm and a urologist consult was requested." (*Id.*) Plaintiff then had "an MRI prostate biopsy," which "was negative, but it revealed two pre-cancerous spots on [Plaintiff's] prostate." (*Id.*, PageID.6–7.)

In August 2024, while Plaintiff was incarcerated at KCF, Plaintiff "was given a follow up prostate specific antigen blood test which came back 5.2 indicating the pre-cancerous spots . . . were now cancerous." (*Id.*, PageID.7.) At an unspecified time after this, Plaintiff was transferred to URF. (*Id.*) At URF, Plaintiff saw an unnamed medical provider in October 2024. (*Id.*) At some unspecified time, Defendant Buchanan "submitted a referral for a urologist consult," and Plaintiff saw a "urologist three weeks later" in November 2024. (*Id.*) "The urologist referred Plaintiff back to Defendant Buchanan with instructions to test Plaintiff for a[] urinary infection and place Plaintiff on the medication Flomax . . . and then perform another prostate

6

specific antigen blood test and refer Plaintiff back to [the urologist] in 4–6 weeks." (*Id.*)

Plaintiff alleges that Defendant Buchanan "did not refer Plaintiff back to the urologist in 4–6 weeks as instructed, and neither did Defendant Buchanan conduct another prostate specific antigen blood test on Plaintiff until four months later" in March 2025. (*Id.*) The test again "came back 5.6 indicating that Plaintiff's pre-cancerous condition has now become cancerous." (*Id.*) Defendant Buchanan did not submit the referral for the urologist until April 24, 2025. (*Id.*) Plaintiff states that it "takes 2–3 weeks for a urologist consult" to be scheduled. (*Id.*) Plaintiff reports that "it has now been over 60 days [since the referral] and [he] still ha[s] not been seen by a urologist." (*Id.*, PageID.8.)

Plaintiff claims that Defendants URF and LCF Correctional Officers Unknown Parties "instructed Defendant Buchanan to delay the referral for a urologist consult." (*Id.*) Plaintiff also claims that Defendants URF and LCF Correctional Officers Unknown Parties "instructed Defendant Eicher to reject Plaintiff's grievances challenging Defendant Buchanan's delay in referring [Plaintiff] to a urologist." (*Id.*) Further, Plaintiff claims that Defendant Rohrig retaliated against and "punished Plaintiff for filing grievances on [Defendants Unknown Parties at LCF] . . . either by not processing [Plaintiff's] grievances or rejecting the grievances on grounds unsupported by the grievance directive." (*Id.*, PageID.9.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment rights, Eighth Amendment rights, and Fourteenth Amendment

7

due process rights. (*See id.*, PageID.8–9.) Plaintiff also avers that Defendants engaged in a civil conspiracy pursuant to § 1983. (*See id.*, PageID.8.) Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.10.)

## II. Standard of Review

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff avers that Defendants violated his First Amendment rights, Eighth Amendment rights, and Fourteenth Amendment due process rights, and that Defendants engaged in a civil conspiracy pursuant to § 1983. (*See* Compl., ECF No. 1, PageID.8–9.) The Court first addresses Plaintiff's Eighth Amendment claims.

### A. Eighth Amendment Claims

#### 1. Claims Regarding the "Personal Protection Device Security Systems"

Plaintiff alleges that in 2005, the MDOC "closed all gun towers in [CFAs]," and the gun towers were "replaced . . . with the personal protection device security systems to secure CFAs." (Compl., ECF No. 1, PageID.4.) Plaintiff describes the "personal protection device security systems" as an "indistinct security device [that] is locked onto prison staff when they come through the control center to report to work by custody staff who are responsible for tracking their movement and physically

9

assisting them when in danger." (*Id.*)  Plaintiff claims that "custody of security staff" use the "personal protection device security systems" to "lock onto Plaintiff and assault Plaintiff sexually by penetrating Plaintiff's [private area] with an indistinct security device," which Plaintiff believes has caused him "to develop prostate cancer." (*Id.*)  Plaintiff claims that Defendant Washington "authorized" Defendants URF and LCF Correctional Officers Unknown Parties' "unprovoked use of excessive force intending to deprive Plaintiff of life, with the sole objective of getting Plaintiff off the personal protection device security systems." (*Id.*, PageID.5–6.)  Further, Plaintiff alleges that Defendants Morrison and Corrigan "knowingly approved of the sexual assaults committed by their officers" using the "personal protection device security systems" due to "Plaintiff's numerous grievance filings about the matter." (*Id.*, PageID.6.)  Plaintiff believes that "the only way [he] can be taken off the personal protection device security systems is by turning off the security systems throughout the MDOC." (*Id.*)

In addition to reviewing a complaint for failure to state a claim pursuant to 28 U.S.C.§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court may also review a prisoner-plaintiff's complaint to determine if any claims are frivolous.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Here, the Court concludes that Plaintiff's claims regarding the "personal protection device security systems" are

10

subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).[4] *See id.* at 32–33 (discussing that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' . . . 'fantastic,' . . . and 'delusional'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327–28 (1989))).

### 2. Claims Regarding Medical Care at URF

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to

---

[4] The Court notes that this is not the first time that Plaintiff has raised claims regarding the "personal protection device security systems." In numerous other cases, Plaintiff has alleged that the "personal protection devices system" or a similar "system" was involved in his forcible consumption of human waste and alleged daily rapes. For example, in three cases filed in 2020, Plaintiff alleged that various officials used the prison "Safety System" to deliver feces and urine directly into Plaintiff's mouth over a period of years. *See Burnett v. Macauley et al.*, No. 1:20-cv-1116 (W.D. Mich.); *Burnett v. Wilborn et al.*, No. 1:20-cv-1161 (W.D. Mich.); *Burnett v. Washington*, No. 1:20-cv-1173 (W.D. Mich.). Plaintiff raised similar allegations in complaints he filed in the United States District Court for the Eastern District of Michigan. *See Burnett v. Jenkins et al.*, No. 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility and Ionia Correctional Facility delivered feces and urine into his mouth using the prison safety systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility used the Safety System to deliver feces and other bodily fluids into his mouth); *Burnett v. Herron et al.*, No. 5:18-cv-12471 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility put feces into his mouth at least three times a week). And, recently in another case, Plaintiff alleged that corrections officials at LCF "programmed the personal protection device computer system to commit the physical acts of rape, by programming the device to grip and gyrate Plaintiff's hips and to repeatedly penetrate Plaintiff's [private area]." *Burnett v. Washington*, No. 1:24-cv-155, 2024 WL 1340551, at *3 (W.D. Mich. Mar. 29, 2024). In that case, as the Court had in many of the other cases noted here, the Court concluded "that Plaintiff's present allegations of imminent danger [we]re 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible' and d[id] not support a conclusion that Plaintiff [wa]s in imminent danger of serious physical injury," and denied Plaintiff leave to proceed *in forma pauperis*. *Id.* (citation omitted).

11

incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207

F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff alleges that in August 2024, while Plaintiff was incarcerated at the KCF, Plaintiff "was given a follow up prostate specific antigen blood test which came back 5.2 indicating the pre-cancerous spots . . . were now cancerous." (Compl., ECF No. 1, PageID.7.) At an unspecified time after this, Plaintiff was transferred to URF. (*Id.*) At URF, Defendant Buchanan "submitted a referral for a urologist consult," and Plaintiff saw a urologist in November 2024. (*Id.*) "The urologist referred Plaintiff back to Defendant Buchanan with instructions to test Plaintiff for a[] urinary infection and place Plaintiff on the medication Flomax . . . and then perform another prostate specific antigen blood test and refer Plaintiff back to [the urologist] in 4–6 weeks." (*Id.*) Plaintiff alleges that Defendant Buchanan "did not refer Plaintiff back to the urologist in 4–6 weeks as instructed, and neither did Defendant Buchanan conduct another prostate specific antigen blood test on Plaintiff

13

until four months later" in March 2025. (*Id.*)  Plaintiff alleges that the test again "came back 5.6 indicating that Plaintiff's pre-cancerous condition has now become cancerous." (*Id.*)  Defendant Buchanan did not submit the referral for the urologist until April 24, 2025. (*Id.*)  Plaintiff reports that "it has now been over 60 days [since the referral] and [he] still ha[s] not been seen by a urologist." (*Id.*, PageID.8.)

Although Plaintiff has by no means proven his Eighth Amendment claim against Defendant Buchanan, Plaintiff's allegations suggest a lack of medical treatment for his pre-cancerous or cancerous condition since the spring of 2025, and Plaintiff's allegations suggest that Defendant Buchanan is responsible for this lack of medical care.  Taking Plaintiff's factual allegations as true, as the Court must do at this early stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment medical care claim against Defendant Buchanan regarding Plaintiff's pre-cancerous or cancerous condition.

### B.    First Amendment Retaliation Claims

Plaintiff alleges that Defendant Rohrig retaliated against and "punished Plaintiff for filing grievances on [Defendants Unknown Parties at LCF] . . . either by not processing [Plaintiff's] grievances or rejecting the grievances on grounds unsupported by the grievance directive." (Compl., ECF No. 1, PageID.9.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of

14

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that Defendants retaliated against him by rejecting or not processing his grievances.  (*See* Compl., ECF No. 1, PageID.9.)  Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action.  *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).  Under the circumstances alleged by Plaintiff, the Court concludes that the rejection and denial of Plaintiff's grievances did not constitute action.  Therefore, Plaintiff fails to state a First Amendment retaliation claim premised on Defendants' rejections and denials of his grievances.

Moreover, to the extent that Plaintiff intended to raise any other retaliation claims, these claims are entirely conclusory.  Plaintiff alleges no facts to suggest that Defendants retaliated against him for engaging in protected conduct.  Instead, Plaintiff merely alleges the ultimate fact of retaliation without any support facts.  However, "conclusory allegations of retaliatory motive 'unsupported by material

15

facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims will be dismissed for failure to state a claim.

### C. Fourteenth Amendment Due Process Claims Regarding Grievances

Plaintiff seeks to hold Defendants liable for their responses to, and rejection of, Plaintiff's grievances. (*See generally* Compl., ECF No. 1.)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding Defendants' responses to his grievances will be dismissed for failure to state a claim.

16

### D. Section 1983 Civil Conspiracy Claims

Plaintiff alleges that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1983. (*See* Compl., ECF No. 1, PageID.8.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff claims in a conclusory manner that Defendants URF and LCF Correctional Officers Unknown Parties "instructed Defendant Buchanan," a doctor at URF, "to delay the referral for a urologist consult." (Compl., ECF No. 1, PageID.8.) Plaintiff also claims in a conclusory manner that Defendants URF and LCF Correctional Officers Unknown Parties "instructed Defendant Eicher," the grievance coordinator at URF, "to reject Plaintiff's grievances challenging Defendant

17

Buchanan's delay in referring [Plaintiff] to a urologist." (*Id.*)  Although Plaintiff raises these conclusory claims, he alleges no *facts* to support the claims.  Instead, Plaintiff's allegations of conspiracy are wholly conclusory.  Plaintiff's subjective belief and personal interpretation of the events, without supporting facts, are insufficient to show that Defendants engaged in a conspiracy.  And, the fact that Defendants each took allegedly adverse actions against Plaintiff does not on its own show that they engaged in a civil conspiracy.  As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57.  Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).  Accordingly, because Plaintiff does not allege *facts* to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*.  Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint against Defendants Washington, Morrison, Corrigan, Unknown Party #1, Rohrig, Eicher, and Unknown Parties will be dismissed for failure to state a claim and/or as frivolous under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim and/or as frivolous,

18

all of Plaintiff's claims against remaining Defendant Buchanan *except* Plaintiff's Eighth Amendment medical care claim against Defendant Buchanan regarding Plaintiff's pre-cancerous or cancerous condition.  Plaintiff's Eighth Amendment medical care claim against Defendant Buchanan regarding Plaintiff's pre-cancerous or cancerous condition remains in the case.

    An order consistent with this opinion will be entered.


Dated:  November 2, 2025             /s/ Phillip J. Green
                                                        PHILLIP JJ. GREEN
                                                        United States Magistrate Judge