UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL ANGELO BURNETT #200640,

          Plaintiff,

v.

BRENDA BUCHANAN, et al.,

          Defendants.

_____/

Hon. Paul L. Maloney

Case No. 2:25-cv-00203

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 15).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted.

## BACKGROUND

Plaintiff is presently incarcerated with the MDOC at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, but the events about which he complains occurred at Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan, and Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan.  (ECF No. 1).  Plaintiff sued MDOC Director Heidi Washington, LCF Warden Bryan Morrison, URF Warden James Corrigan, URF Deputy Warden of Security Unknown Party #1, URF Medical Doctor Brenda Buchanan, LCF Grievance Coordinator Jennifer Rohrig, URF Grievance Coordinator D. Eicher, and URF and LCF Correctional Officers Unknown Parties.   (ECF No. 1, PageID.2-4).   The Court screened

out all Defendants and claims except for Plaintiff's Eighth Amendment medical care claim against Defendant Buchanan regarding Plaintiff's pre-cancerous or cancerous condition.   (ECF Nos. 5, 6).   Defendant Buchanan then moved for summary judgment on exhaustion grounds.   (ECF No. 15).   Plaintiff then filed an Amended Complaint. (ECF No. 19).   The undersigned judicial officer issued a Report and Recommendation, screening the Amended Complaint pursuant to 28 U.S.C. § 1915A and recommending that claims against Defendants Buchanan and Russo remain.   (ECF No. 21).   After no objections, the Court adopted the Report and Recommendation.   (ECF No. 31).   At this juncture, the remaining claims are as follows: the Eighth Amendment claims of denial of medical care against Defendants Buchanan and Russo arising from Plaintiff's pre-cancerous/cancerous condition.   (ECF No. 31, PageID.357).

In his amended complaint, Plaintiff alleges the following regarding his claims against Defendants Buchanan and Russo.   (ECF No. 19).   At LCF, Plaintiff "suffered a serious physical injury to [his] prostate" and developed prostate cancer six months later "from direct exposure to an ultraviolet device."   (ECF No. 19, PageID.292).   Plaintiff was then transferred to KCF, where he "had to wait an additional two months for a referral to [a] urologist."   (ECF No. 19, PageID.293).   Three weeks after his urology consultation, "the urologist referred Plaintiff back to Defendant Buchanan, a nurse practitioner, "with instructions to test [him] for [a] urinary infection," "prescribe [him] medication," "administer another PSA blood test," and "refer [Plaintiff] back to [the urologist] in four to six weeks."   (*Id*.).   Defendant Buchanan "did not refer [Plaintiff]

back to [the urologist] as requested or administer another PSA blood test" until four months later, which "confirmed the presence of prostate cancer." (ECF No. 19, PageID.293). Defendant Buchanan "did not submit another referral to a urologist until April 24, 2025, or thirty days later" (ECF No. 19, PageID.293-94). Before consulting with a urologist, Plaintiff was transferred to URF. (ECF No. 19, PageID.292-93).

At URF, after a prostate blood test on October 3, 2025, indicated an "elevated score of 10.3 indicated that [Plaintiff's] prostate cancer [was] spreading," Plaintiff's urologist ordered Defendant Russo "to submit a referral to the Bureau Health Care Service (BHCS)[,] requesting approval for an 'urgent' prostate biopsy." (ECF No. 19, PageID.290). The BHCS "approved the biopsy in five days," but Defendant Russo "disobeyed the medical order" by "wait[ing] for over 40 days before she submitted the referral to BHCS." (*Id*.)

Defendant Buchanan moves for summary judgment on exhaustion grounds. (ECF No. 15). [1] Plaintiff responded to her motion. (ECF No. 25). Defendant Buchanan replied. (ECF No. 30). The Court finds that oral argument is unnecessary. *See* W.D. MICH. LCIVR 7.2(d).

---

[1] As stated in the Report and Recommendation, Plaintiff reasserts the remaining Eighth Amendment denial-of-medical-care claim against Defendant Buchanan from his initial complaint in his amended complaint. (ECF No. 21, PageID.304). Accordingly, the undersigned judicial officer is addressing Defendant's motion for summary judgment as the claims are the same and based on the same alleged facts.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Ibid.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that the PLRA exhaustion requirement requires "proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or

the issue falls within the jurisdiction of Internal Affairs.    MDOC Policy Directive 03.02.130 ¶ W (Sept. 25, 2023; Oct. 21, 2024).[2]    The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue.    (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.    MDOC Policy Directive 03.02.130 ¶ CC (Sept. 25, 2023; Oct. 21, 2024).    The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."    MDOC Policy Directive 03.02.130 ¶ Y (Sept. 25, 2023; Oct. 21, 2024).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.    MDOC Policy Directive 03.02.130 ¶ JJ (Sept. 25, 2023; Oct. 21, 2024).    If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.    MDOC Policy Directive 03.02.130 ¶ NN (Sept. 25, 2023; Oct. 21, 2024).

In support of her motion for summary judgment, Defendant Buchanan provides evidence that Plaintiff pursued one grievance through Step III about the alleged events

---

[2] It is unclear which date of MDOC Policy Directive 03.02.130 applies to Plaintiff's claims against Defendant Buchanan—the September 25, 2023 version or the October 21, 2024 version.

that also names her: Grievance URF-25-04-0879-28I.[3]    (ECF No. 15, PageID.80-81; ECF No. 15-1, PageID.183-87).

Grievance URF-25-04-0879-28I does not establish that Plaintiff has properly exhausted his remaining claim against Defendant Buchanan.   On April 16, 2025, Plaintiff submitted Grievance URF-25-04-0879-28I, alleging that, in November 2024, a urologist referred Plaintiff "back to NP Buchanan with specific instructions to perform another PSA.   The PSA was performed on 3-31-25, but [Plaintiff] ha[d] not been referred back to the urologist as instructed" as of the date of the grievance.   (ECF No. 15-1, PageID.186).   In attempt to resolve the issue, Plaintiff stated on the form that he "sent a kite to NP Buchanan on April 11, 2025, "informing her that [Plaintiff] would be filing a grievance on her unless she stop[ped] violating [Plaintiff's] constitutional rights." Plaintiff further stated that Defendant Buchanan "did not respond to the kite."   (*Id.*).

The Step I grievance was rejected because Plaintiff failed to "mention or attempt to resolve the issue of the PSA test or a follow up visit to [a] [u]rologist" with Defendant Buchanan.   (ECF No. 15-1, PageID.187).   Plaintiff appealed to Step II, in which the

---

[3] To exhaust a claim, *inter alia*, the grievance must identify an individual and match the issues in the complaint.   *See Rosencrantz v. Schmalbach*, No. 1:24-CV-886, 2025 WL 4082253, at \*3 (W.D. Mich. Dec. 26, 2025*)* ("It is well understood that if a prisoner identifies by name a specific individual in a Step I grievance, that grievance can serve to exhaust claims only as to the individual named in the Step I grievance."); *see also Smith v. Washington*, No. 24-12652, 2025 WL 2947014, at \*4 (E.D. Mich. Aug. 29, 2025) ("To exhaust a claim under the PLRA, an incarcerated person's grievance claim must match the issue(s) found in the individual's § 1983 complaint.").

rejection was upheld.    (ECF No. 15-1, PageID.184-85).    Plaintiff also appealed to

Step III, but the rejection was again upheld.    (ECF No. 15-1, PageID.183-84).

Defendant Buchanan argues that Grievance URF-25-04-0879-28I was properly

rejected.    The Court agrees.    A grievance may be rejected if

> [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond their control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs.    An attempt to resolve Health Care grievances regarding routine care is accomplished by submitting a Health Care Request form (CHJ-549) to the facility Health Care staff as directed in PD 03.04.100 "Health Services."

MDOC Policy Directive 03.02.130 ¶¶ P(4) (Sept. 25, 2023; Oct. 21, 2024).    In attempt to

resolve the issue through an April 11, 2025 kite, Plaintiff did not state the substance of

his issue with Defendant Buchanan but merely stated that he "would be filing a

grievance on her unless she stop[ped] violating [Plaintiff's] constitutional rights."    (ECF

No. 15-1, PageID.186).    It is reasonable that this vague statement did not amount to a

substantive attempt at resolving the issue in Grievance URF-25-04-0879-28I with

Defendant Buchanan before filing it.    Accordingly, this grievance was properly rejected

and cannot serve to exhaust any claims against Defendant Buchanan.

In response to Defendant's motion, Plaintiff argues in a declaration that he

attempted to resolve the issue before filing Grievance URF-25-04-0879-28I by submitting

a healthcare kite on February 12, 2025, in which he requested a biopsy.[4]    (ECF No. 26,

---

[4] In his response to Defendant Buchanan's motion, Plaintiff argues that the February 12, 2025 healthcare kite was his attempt to resolve the issue, but on the Grievance URF-

PageID.328; ECF No. 26-2, PageID.340).    But under MDOC Policy Directive 03.02.130 ¶¶ W and CC (Sept. 25, 2023; Oct. 21, 2024), a Step I grievance must be filed within five business days after attempting to resolve the issue with staff.    Because Grievance URF-25-04-0879-28I was filed on April 16, 2025 (ECF No. 15-1, PageID.186), and Plaintiff's proffered healthcare kite was dated February 12, 2025 (ECF No. 26-2, PageID.340), the February 12, 2025 kite cannot serve as a proper or timely attempt to resolve the issue in Grievance URF-25-04-0879-28I.    Accordingly, Plaintiff has not provided sufficient evidence to create a genuine issue of fact, and Defendant Buchanan has satisfied her burden to show that Plaintiff failed to properly exhaust the claims against her.    The undersigned recommends that Defendant's motion be granted.

## CONCLUSION

For the reasons articulated herein, the Court recommends that Defendant Buchanan's Motion for Summary Judgment (ECF No. 15) be granted.    The remaining claims are Plaintiff's Eight Amendment denial-of-medical-care claims against Defendant Russo arising from Plaintiff's pre-cancerous/cancerous condition.    For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous and not in good faith.    *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

---

25-04-0879-28I form, he stated that an April 11, 2025 healthcare kite was his attempt to resolve.    (ECF No. 15-1, PageID.186; ECF No. 26, PageID.328-29).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Dated: March 24, 2026                              /s/ Phillip J. Green
                                                   PHILLIP J. GREEN
                                                   United States Magistrate Judge